# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MICHEAL ROWSER,**
        **Plaintiff,**

    v.                                                      Case No. 05-C-0274

**ALLIANT FOODSERVICE, INC.,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Micheal Rowser brings this action alleging that defendant Alliant Foodservice, Inc., his former employer, terminated his employment based on his race (African-American) and in retaliation for his complaints about discriminatory treatment, his filing of a prior discrimination suit and his support for a co-worker's discrimination claim, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq. and 42 U.S.C. § 1981. Defendant now moves for summary judgment.

## I. SUMMARY OF FACTS

Between July 1998 and October 2001, defendant employed plaintiff as a delivery driver. At all relevant times, defendant employed between forty and fifty delivery drivers, approximately ten percent of whom were African-American. Plaintiff's tenure as an employee was stormy. Apparently, plaintiff frequently complained to defendant about its treatment of African-American drivers. At one point, he filed a discrimination suit against defendant, which was ultimately dismissed. He also supported the claim of another African-American driver, LeRay Haynes, who complained of discriminatory treatment. In

addition, defendant cited plaintiff for a number of rule violations. Plaintiff also was involved in a dispute with one of defendant's managers, Robert Stefani.

In October 2001, plaintiff was using a freight elevator at Kopp's Frozen Custard ("Kopp's") to make a delivery. The elevator stalled, and Kopp's managers could not fix it and had to call a repair person. In the course of the incident, the elevator sustained damage, but the parties' dispute the cause of the damage. The day after the incident, Kopp's's insurance agent contacted defendant, claiming that plaintiff had damaged the elevator in the amount of some $5,000. Defendant's managers, Stefani and Frank Rosiak, investigated the matter. They state that as a result of the investigation, they concluded that plaintiff had caused the damage, failed to report an accident that he caused and thus violated Article VIII sec. 2 of the union contract (which identifies circumstances warranting immediate termination). Subsequently, defendant terminated plaintiff. Defendant did not offer plaintiff a last chance agreement.

The parties contest many of the facts. I will discuss some of the facts at greater length in the course of the decision and will also provide additional facts.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Material" facts are those facts that might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over such facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id. "A district judge faced with [a summary judgment] motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow,

2

Case 2:05-cv-00274-LA   Filed 07/25/07   Page 2 of 14   Document 66

the plaintiff would have a fair chance of obtaining a verdict.  If not, the motion should be granted and the case dismissed." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572-1573 (7th Cir. 1989) (citations omitted).

The movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may meet its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325; see also Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir. 1989).  If the moving party meets its burden, the nonmoving party then must present specific facts showing that there is a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion.  Anderson, 477 U.S. at 255.  "Motions for summary judgment in employment discrimination cases must be approached 'with added rigor,' because credibility and intent are often central issues. '[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (citation omitted) (quoting Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994)).

### III.  DISCRIMINATION CLAIM

Both Title VII and § 1981 prohibit employers from discriminating on the basis of race.  An employee may establish discrimination by presenting direct evidence of a discriminatory motive or by relying on the indirect burden-shifting method outlined in

3

McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff states that he relies on both methods.

## A. Direct Method of Proof

A plaintiff can establish discrimination directly in several ways. First, he may show that certain statements or actions on the part of the employer suggest a discriminatory motive. Troupe v. May Dep't Stores, Inc., 20 F.3d 734, 736 (7th Cir. 1994). Second, he may show that the employer systematically treated non-African-American employees better than African-Americans. Id. at 736. Third, he may show that he was qualified but replaced by a non-African-American, and that the employer's stated reason for making the change was a pretext. Under any of the above approaches, the evidence "must point directly to a discriminatory reason for the employer's action. Otherwise, the plaintiff must proceed by [the] indirect route." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003). Plaintiff fails to establish discrimination through the direct method. This is so because the evidence he adduces does not directly point to a discriminatory motive.

## B. Indirect Method

To prevail under the indirect method, the plaintiff must first establish a prima facie case. He may do this by presenting evidence tending to show that: (1) he was a member of a protected class; (2) he was performing his job well enough to satisfy his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably. Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006). If he establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to

4

come forward with evidence of a legitimate, non-discriminatory reason for discharging the him. If the defendant articulates such a reason, the burden shifts back to the plaintiff to show that the stated reason was actually a pretext for discrimination. McDonnell-Douglas, 411 U.S. at 804. While a court should not engage in a pretext analysis unless the plaintiff first establishes all of the elements of the prima facie case, including that he was meeting his employer's legitimate expectations, if the plaintiff demonstrates that the expectations identified by the employer were in fact pretextual, the expectations and pretext analyses may merge. See Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006). In the present case, the parties treat the legitimate expectations and pretext inquiries together. Therefore, I will do likewise.

As an African-American, plaintiff is a member of a protected class, and by being terminated, he experienced an adverse employment action. Thus, he meets the first and third prongs of the McDonnell-Douglas test. Before discussing the job performance/pretext question, I will address the question of whether defendant treated similarly situated non-African-American employees more favorably than plaintiff.

To be similarly situated to the plaintiff, another employee need not be identically situated to him but rather "directly comparable . . . in all material respects." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). In determining whether a comparison employee is similarly situated, a court should consider such factors as whether the employee had the same supervisor as the plaintiff, was subject to the same rules and standards and performed similar duties. See Hague, 436 F.3d at 823; see also Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). In the present case, plaintiff was fired for violating Article VIII sec. 2 by recklessly causing property damage and failing

5

to report the damage that he caused. Non-African-American drivers working under the same supervisor and subject to the same rules as plaintiff who were also accused of violating Article VIII sec. 2 of the union contract appear to be substantially similar to him. Defendant contends that such employees are not similarly situated because they did not cause an incident and damage of the type that plaintiff caused. However, plaintiff denies causing the incident or the damage attributed to him by defendant. At this point in the proceeding, I must take all facts in plaintiff's favor. If I take all facts in plaintiff's favor, I must reject defendant's contention that no employees are situated similarly to plaintiff. Further, nothing in Article VIII sec. 2 suggests that one type of violation is any more serious than another. In addition, in their depositions both Stefani and Rosiak indicated that all Article VIII sec. 2 violations are equally serious. Thus, I will compare plaintiff to non-African-American drivers charged with violations of Article VIII sec. 2 of the union contract.

Plaintiff points to a number of such drivers who defendant did not terminate. Instead, defendant punished such drivers less severely and/or permitted them to enter into last chance agreements. As a comparison employee, plaintiff cites Clark Sherman, a white driver whom defendant charged with various violations of Article VIII sec. 2, including using abusive and offensive language towards customers, handling customer product abusively, theft, violating safety rules and urinating in public. Customers routinely complained about Sherman's attitude and lack of service and several refused to work with him. In 1999, defendant terminated Sherman after the urinating in public incident. However, defendant later reinstated him with a last chance agreement. Several months later, Sherman refused to follow a customer directive and failed to complete a delivery, and defendant gave him another last chance agreement. Subsequently, after Sherman

6

threatened another employee, defendant fired him. Defendant states that Sherman's work record was better than plaintiff's, but Stefani noted that an element of subjectivity was involved in giving Sherman the last chance agreement. Plaintiff also cites Jim Birenbaum, another white driver, as a comparison employee. Birenbaum violated Article VIII sec. 2 when he recklessly caused $1,000 in damages by throwing a case of fish inside his trailer that went out the side door hitting a car. Defendant gave Birenbaum only a verbal warning for such conduct. Further, Slade Noreen, a white driver, both refused work and was dishonest, both Article VIII sec. 2 violations, and defendant gave him a two-day suspension.

As indicated, defendant stated that it terminated plaintiff for violating Article VIII sec. 2 by engaging in reckless conduct resulting in property damage and for failing to report an accident that he caused resulting in property damage. Defendant did not give plaintiff a last chance agreement, although plaintiff's conduct does not appear to be as serious as Sherman's. Defendant states that plaintiff's work history was worse than Sherman's because plaintiff had attendance violations and some chargeable accidents. However, Sherman's record was also less than impeccable, and considering both the charges and the work history, plaintiff and Sherman seem relatively similarly situated. Further, even assuming that the charge against plaintiff involved dishonesty, the punishment Noreen received indicates that not all dishonesty results in immediate termination.

While the white drivers identified above are not identical to plaintiff, they are similar. Further, the record shows that the punishments imposed by defendant were somewhat subjective and differed considerably. Therefore, plaintiff satisfies the requirement that he show that defendant treated similarly situated employees less punitively than him.

I turn now to the job performance/pretext question. Defendant argues that plaintiff was not performing up to its standards because he caused several thousand dollars worth of damage to the Kopp's freight elevator by forcing it off its tracks while attempting to raise it. Defendant states that it reached this conclusion based on the accounts of the incident provided by Kopp's's managers Barry Burkard and Jude Kaczkowski, who said that they told plaintiff not to raise the elevator, but that he nevertheless attempted to do so. Plaintiff denies Kopp's's managers' version of the incident, denies wrongdoing and denies damaging the elevator. He contends that defendant did not conduct a bonafide investigation and asserts that there is evidence indicating that defendant used the incident as a pretext for getting rid of him. As previously indicated, the performance and pretext issues merge, and I will address them together.

A pretext is a lie. Richter v. Hook-SupRx, Inc., 142 F.3d 1024, 1029-30 (7th Cir. 1998). An employee can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Weihaupt v. Am. Med. Ass'n, 874 F.2d 419, 428 (7th Cir. 1989). The employee can demonstrate that the employer's reasons are unworthy of credence by producing evidence that (1) the proffered reasons have no factual basis; (2) the proffered reasons did not actually motivate his discharge; or (3) that they were insufficient to motivate discharge. Id.; see also Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir. 1994) (stating that a plaintiff can create an inference of pretext by refuting facts supporting an employer's claim of performance deficiency). However, where the employer has honestly described the motivation for its decision, that decision is not pretext for discrimination just because the plaintiff asserts the defendant's

8

beliefs were inaccurate. Franzoni v. Hartmarx Corp., 300 F.3d 767, 772 (7th Cir. 2002).

In the present case, plaintiff presents enough evidence to enable a reasonable jury to conclude that defendant did not honestly believe that he caused the damage to the Kopp's elevator but used the incident to get rid of him. Plaintiff presents a number of pieces of evidence that taken together could enable a factfinder to reach this conclusion.

First, plaintiff provides an affidavit disputing defendant's version of the incident at Kopp's. Plaintiff states that he took one or two trips to the basement in the freight elevator, after which the elevator broke. He states that he contacted Burkard, who in turn asked Kaczkowski to look at it. He states that he and Kaczkowski went to the basement, and Kaczkowski played with various switches attempting to get the elevator to work. He says that Kaczkowski then sent him upstairs and directed him to press a button to see if Kaczkowski had succeeded in fixing the elevator. Although the elevator moved up, it would not go back down. The managers then called a repair-person. Plaintiff finished the delivery by using the stairs and a handcart, after which Burkard gave him several sandwiches. When plaintiff left, he asked the repair-person when the elevator would be fixed, and he said later that day. Because the repair-person assured him that he would soon have the elevator fixed, plaintiff states that he had no reason to believe that he was obliged to report the incident to his supervisor.

Second, plaintiff presents the affidavit of a union steward who states that the day after the incident occurred, defendant's managers represented that Kopp's had posted signs prohibiting use of the elevator and that plaintiff disobeyed them, and that defendant used this story to justify not paying plaintiff unemployment. The steward further states that

9

defendant later acknowledged that Kopp's posted no such signs. This evidence tends to support plaintiff's argument that defendant may have considerably exaggerated plaintiff's role in the Kopp's incident in order to fire him. Plaintiff also presents evidence that in a previous discrimination case, Rosiak stated that he possessed photographic evidence, an assertion which defendant subsequently denied. He argues that this discrepancy further indicates defendant's willingness to make misrepresentations to defeat legitimate discrimination claims. Defendant does not argue that this evidence is irrelevant or inadmissible, thus I may consider it.

Third, plaintiff points to inconsistencies in the Burkard and Kaczkowski accounts of the incident and argues that Stefani and Rosiak ignored these inconsistencies in order to reach a predetermined conclusion that he was at fault. Burkard and Kaczkowski's statements are inconsistent in several ways. First, they are at odds about the extent to which the elevator appeared to be damaged. Burkard states that the elevator was six inches from coming out of the shaft and Kaczkowski says it was three and a half feet outside the shaft. Second, their accounts as to who saw what and when differ. Burkard says that he was the first to see the elevator going up, and Kaczkowski states that he saw the elevator moving before Burkard did. Further, defendant has made conflicting statements about whether the reports actually conflict and, if so, whether it matters. Stefani was initially concerned about the discrepancies in the accounts but subsequently stated that the statements were reliable. However, in a deposition, he stated that the statements did not conflict. One possible inference from the inconsistencies in the reports of the Kopp's managers and from defendant's apparent lack of interest in them is that the

10

managers had an interest in blaming plaintiff (rather than themselves) for the damage to the elevator and that defendant ignored this possibility.

Plaintiff also calls into question the legitimacy of Stefani and Rosiak's on-site inspection. He presents expert testimony indicating that had they conducted a true and impartial inspection, they would have found that when the elevator was in the up position, it was impossible to see the control room because the floor of the elevator blocks the view into the shaft. Indeed, they state that regardless of the position of the elevator, the view of the control room is blocked by a wall supporting the elevator mechanics. If this is so, the information provided by Burkard as to where and when he saw plaintiff after the alleged incident is implausible.

In his written statement, Kaczkowski admitted that he tampered with the controls after the elevator stopped working, providing an alternate explanation for the elevator damage and substantiating plaintiff's own version of how the elevator was damaged. Plaintiff's expert notes that Kopp's's managers were unqualified to troubleshoot problems with the elevator. Defendant appears not to have taken into account Kaczkowski's possible role in the incident.

In addition, defendant suggests that plaintiff successfully manipulated the elevator controls by reaching into the 400 volt live control box to bypass the elevator safety switch required to move the elevator using the up/down switch. Plaintiff's expert suggests that a delivery person such as plaintiff would not typically possess the technical knowledge that would enable him to manipulate the control relays as suggested, without some instruction. Although both Kaczkowski and Burkard propose that this is what plaintiff did, it is unclear

11

how plaintiff would have known what to do. In sum, plaintiff may have done what defendant suggests, but it seems somewhat implausible.

Lastly, Stefani's choice of wording on the questionnaire he sent to Burkard is unusual. Stefani prefaces his questions by thanking Burkard in advance, not for his cooperation, but for his support in resolving the elevator incident. While the choice of words may be entirely innocent, it may not be.

Thus, plaintiff has raised a sufficient question as to whether defendant's proffered reasons for terminating him were in fact its true reasons. Because plaintiff has shown a genuine dispute concerning the material facts, the question as to what defendant actually believed must be resolved. See Forrester v. Rauland-Borg Corp., 453 F.3d 416 (7th Cir. 2006). As a genuine issue of fact exists here, summary judgment is not appropriate. Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1316-17 (7th Cir. 1989).

## IV. RETALIATION CLAIM

Again, concerning a retaliation claim, plaintiff can establish a prima facie case either directly or indirectly. Under the direct method, he must show (1) engagement in statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640 (7th Cir. 2002). Plaintiff engaged in protected activity when he complained about racism and experienced an adverse employment action when defendant fired him. However, he does not establish a causal connection, either through suspicious timing or other facts connecting the termination to the protected activity.

The indirect method is an "adaptation of McDonnell-Douglas to the retaliation context." Stone, 281 F.3d at 644. Plaintiff must show that he: (1) engaged in statutorily

12

protected activity; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activities. Id. at 644; Hilt-Dyson v. City of Chi., 282 F.3d 456, 466 (7th Cir. 2002). Under the indirect method, plaintiff "need not show even an attenuated causal link." Stone, 281 F.3d at 644. If he establishes a prima facie case, the burden shifts to defendant to provide a legitimate, non-invidious reason for the adverse employment action. Id. at 644. After this, the burden shifts back to plaintiff to show that defendant's reason is pretextual. Haywood v. Lucent Techs., 323 F.3d 524, 531 (7th Cir. 2003) (citing Klein v. Trs. of Ind. Univ., 766 F.2d 275, 280 (7th Cir. 1985)).

It is undisputed that plaintiff engaged in protected activities and experienced an adverse employment action, thus satisfying two of the four prongs. As discussed above, plaintiff presents some evidence that defendant treated similarly situated members, i.e., drivers who committed comparable violations but who did not complain, differently (I again compare plaintiff to Sherman, Birenbaum and Noreen, none of whom complained) and that defendant's stated reason for the termination could be pretextual. Therefore, summary judgment on the issue of retaliation is also not appropriate.

## V. CONCLUSION

Therefore,

**IT IS ORDERED** that defendant's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that a telephonic status conference is set for **August 8, 2007 at 2:00 p.m.** The court will initiate the call.

13

Dated at Milwaukee, Wisconsin, this 25 day of July, 2007

/s_____
LYNN ADELMAN
District Judge